UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| RAPHAEL NOEL ETIENNE,<br><br>    Petitioner,<br><br>    v.<br><br>BEATRIZ VILLARREAL ZUNIGA,<br><br>    Respondent. | CASE NO. C10-5061BHS<br><br>SUPPLEMENTAL FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER |

This matter comes before the Court on Petitioner Raphael Noel Etienne's ("Etienne") petition seeking the return of his two minor children to Mexico pursuant to the 1980 Hague Convention on the Civil Aspects of International Child Abduction ("Convention"), Oct. 25, 1980, T.I.A.S. No. 11670, S. Treaty Doc. No. 99-11, and its implementing statute, the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 11601, *et seq*. These findings of fact, conclusions of law and order are a supplement to the Court's June 2, 2010, findings of fact and conclusions of law (Dkt. 66). Having considered the evidence brought before the Court during a two-day bench trial, a report following an interview with B.N. from Joanne Solchany PhD, ARNP, and the parties' submissions in support of their respective positions, the Court concludes that the petition for return is denied with respect to B.N.

ORDER – 1

## I. PROCEDURAL HISTORY

On June 2, 2010, the Court issued findings of fact and conclusions of law and denied the petition for return with respect to E.N. based on her objections to return. Dkt. 66. Further, the Court found that there was substantial evidence that B.N. is well-settled in the United States. Dkt. 66. However, the Court reserved judgment on the well-settled issue and other defenses, with respect to B.N., finding it would benefit from the report of a child psychologist, or similar professional, based on his or her interview with B.N. with respect to his life in Mexico, his relationship with his parents, and his life in the United States. Dkt. 66.

The parties agreed to have Joanne Solchany, PhD, ARNP, a professional who specializes in working with children, interview B.N. Dkt. 70. On June 29, 2010, the Court sent a letter to Dr. Solchany which gave a brief explanation of the relevant portions of the Hague Convention, the well-settled defense itself, and the non-exclusive list of factors the Court applies in considering the defense. Dkt. 72. In addition, the letter informed Dr. Solchany that "[t]he focus of [the] evaluation should be on how well-settled Brian is in his new environment at the present time, as compared with his current connections to his life in Mexico." *Id*. at 2. On August 20, 2010, Dr. Solchany interviewed B.N. and later submitted her report to the Court. Dkt. 77.

## II. DISCUSSION AND FINDINGS OF FACT

In the Court's June 2, 2010, order containing its findings of fact and conclusions of law, the Court reserved ruling on whether Respondent Beatriz Villarreal Zuniga ("Villarreal") had proven by a preponderance of the evidence that B.N. is well-settled in the United States as defined in Article 12 of the Convention. As discussed below, the Court concludes that B.N. is well-settled in the United States.

Because the Court concluded that Etienne did not file his petition within one year of the wrongful retention of the children (Dkt. 66 at 13-16), Villarreal is entitled to demonstrate that B.N. should not be returned because they are now settled in their new environment. *See* Convention, art. 12. The Convention itself does not define what

constitutes a child being "settled in its new environment." *Id*. However, the U.S. State Department has established that "nothing less than substantial evidence of the child's significant connections to the new country is intended to suffice to meet the respondent's burden of proof" in asserting the well-settled defense. Public Notice 957, Text & Legal Analysis of Hague International Child Abduction Convention, 51 Fed. Reg. 10494, 10509 (U.S. State Dep't, Mar. 26, 1986). Accordingly, the mere passage of time does not establish this defense. *Anderson*, 250 F. Supp. 2d at 880 (citing *In re Robinson*, 983 F. Supp. 1339, 1345 (D. Colo. 1997)). "Rather, the evidence must show that the child is 'in fact settled in or connected to the new environment so that, at least inferentially, return would be disruptive with likely harmful effects.'" *Anderson*, 250 F. Supp. 2d at 880-81 (quoting *In re Robinson*, 983 F. Supp. at 1345). Courts analyzing this defense have weighed several factors in determining whether a child is "settled" for purposes of this defense. *In re B. DEL C.S.B.*, 559 F.3d 999, 1009 (9th Cir. 2009); *In re Koc*, 181 F. Supp. 2d 136 (S.D.N.Y. 2001); *In re Robinson*, 983 F. Supp. at 1346; *Zuker*, 2 F. Supp. 2d at 141. In *In re B. DEL C.S.B.*, the Ninth Circuit adopted a list of six factors it considered relevant to a court's determination of whether a child is now settled in a new environment:

> (1) the child's age; (2) the stability and duration of the child's residence in the new environment; (3) whether the child attends school or day care consistently; (4) whether the child has friends and relatives in the new area; (5) the child's participation in community or extracurricular school activities, such as team sports, youth groups, or school clubs; and (6) the respondent's employment and financial stability.

*Id*. at 1009. In addition to these six factors, the Ninth Circuit decided that, in some cases, a court should consider the immigration status of the child and the respondent. *Id*. However, the Ninth Circuit in *In re B. DEL C.S.B.* concluded, as a matter of first impression, that lack of lawful immigration status is not determinative of whether a child is "settled" for purposes of Article 12 of the Convention and such status is relevant only where an "immediate, concrete threat of deportation" exists. *Id*. "Although all of these

ORDER – 3

factors, when applicable, may be considered in the 'settled' analysis, ordinarily the most important is the length and stability of the child's residence in the new environment." *Id*.

The Court made the following findings of fact in its previous order that are relevant to Villareal's well-settled defense with regard to B.N.:

> When Villarreal and the children arrived in Washington in July of 2008, they lived with Villarreal's uncle, Filiberto Zuniga ("Filiberto"). Tr. 194; 260-61. Villarreal and Filiberto had disagreements while she and her children were living with him. Tr. 261-63. On the evening of Thanksgiving day in 2008, Villarreal and the children came back to Filiberto's home and the family would not open the door for them. Tr. 260-61. Villarreal and the children spent that night in a hotel. Tr. 195-96. The next day, they moved into a house. Tr. 196-97. Approximately two weeks later, Villarreal and her children moved into an apartment in Tacoma, Washington. Tr. 197-98; 290-91. Approximately six months later, Villarreal and her children moved into the apartment in Lakewood, Washington, where they now reside. Tr. 198-99; 291.
>
> * * *
>
> B.N. is currently in the second grade at a public elementary school in Lakewood, Washington. Exh. A-5. He is doing well academically in school and has many friends. Tr. 263-64; Exh. A-5. He enjoys school, playing with his friends that live near his apartment, and playing video games. Tr. 264-65. B.N. also very much enjoys going to church and is active with the church's children's group. Tr. 244; 264-65.
>
> Villarreal has held several part-time jobs since she and the children have lived in Washington. Tr. 292-93. She is not currently receiving any public assistance from Washington, with the exception of medical coupons. Tr. 294. She currently earns money by selling jewelry at a swap meet. Tr. 292-93. Villarreal has a petition for asylum pending with the United States Department of Homeland Security and has applied for employment authorization from U.S. Citizenship and Immigration Services that, at the time of trial, was still pending approval. Tr. 270-71; Exh. A-9. At the time of trial, Villarreal had received an offer of employment with an insurance company pending the approval of her application for work authorization. Tr. 271-72; Exh. A-10.

Dkt. 66 at 4-5. One of the Court's main purposes in requesting that Dr. Solchany evaluate B.N. was to obtain greater input from B.N. himself on his life in Mexico and his life in the United States, as well as his perspective on his relationship with his parents. In addition, the Court wanted to obtain Dr. Solchany's professional opinion on how B.N. has adjusted to his life in the United States and his relationship with his parents. Dr. Solchany's report confirmed the Court's previous findings, as stated above, regarding B.N.'s residence, his participation in school, church, and activities, his relationship with friends, and Villarreal's employment situation. *See* Dkt. 77 at 9-10.

ORDER – 4

Having taken into account its own fact finding and the report submitted by Dr. Solchany, the Court concludes that the factors weigh in favor of concluding that B.N. is well-settled as defined by Article 12 of the Convention and that Villarreal has shown substantial evidence of B.N.'s significant connections to the United States.  Specifically, the Court finds that while B.N. is not of an age where his objection to removal is, on its own, insufficient to prevent removal, he is of an age and maturity level where he is able to explain his choices and requests and able to make connections to the community in which he lives that the age factor weighs in favor of finding him well-settled.  Next, the Court finds that while Villarreal and her children have had multiple residences since coming to the United States, the fact that they have lived at their current residence for almost two years constitutes a stable environment such that this factor weighs in favor of finding B.N. well-settled.  Third, B.N. has attended the same school and actively participated in the same church for almost two years, both of which weigh in favor of finding him well-settled.  Although B.N., and Villarreal, have described their relationship with their relatives in the area as somewhat tumultuous, B.N. has a significant amount of friends surrounding his residence as well as friends at his school and church.  The fact that B.N. has been able to adapt to the new environment and make friends easily weighs in favor of finding him well-settled.  Next, B.N.'s participation in swimming and very active participation in his church's youth group weigh in favor of finding him well-settled.  Finally, Villarreal's employment and financial stability has been somewhat of an issue, although the children have never gone without basic necessities and she has never received public assistance.  Dr. Solchany reported that at the time she interviewed B.N., Villarreal had recently started a job working in a chiropractic clinic.  Based on Villarreal's history of employment and financial situation, the Court concludes that this factor is neutral.  In addition, the Court concludes that Villarreal's immigration status is not determinative or even relevant, as such status is only relevant if an "immediate, concrete threat of deportation" exists, which has not been shown.  *In re B. DEL C.S.B.*, 559 F.3d at 1009.  Therefore, the Court concludes that the factors laid out by the Ninth

ORDER – 5

Circuit, when taken as a whole, weigh in favor of concluding that B.N. is well-settled in his new environment.

Dr. Solchany also interviewed B.N. regarding his relationship with his parents. Dr. Solchany found that B.N. loves both his mother and father, but that he feels closer to his mother and wants to live with her.  In addition, although B.N. loves his father, he also is somewhat apprehensive of being with him and wanted certain precautions and safety measures in place if he were to go and visit him, including a request that his mother's attorney accompany him to Mexico.  B.N.'s perspective on his relationships with his parents also weighs in favor of concluding that he is well-settled in the United States as he considers his living situation with his mother his home and he views Mexico as a place he would go to visit his father.

### III. CONCLUSIONS OF LAW

Based on the findings of fact discussed above, the Court makes the following conclusions of law based on a preponderance of the evidence:

1. B.N. is "well-settled" in the United States as defined by Article 12 of the Convention.

2. Etienne's petition, with respect to B.N., is denied based on his being "well-settled" in the United States as defined by Article 12 of the Convention.

### IV. ORDER

Therefore, it is hereby **ORDERED** that Etienne's petition is **DENIED** with respect to B.N.

DATED this 24th day of November, 2010.

BENJAMIN H. SETTLE
United States District Judge

ORDER – 6